# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KARIN LYN CAVANAUGH, | CIVIL ACTION NO. 3:13-cv-1162 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| NANCY OLSEN NORTON, | |
| Defendant. | |

## MEMORANDUM

Presently before the Court is a Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction or alternatively to Transfer Venue (Doc. 4) filed by Defendant Nancy Olsen Norton ("Defendant"). Defendant contends that Plaintiff Karin Lyn Cavanaugh ("Plaintiff")'s Complaint should be dismissed for lack of personal jurisdiction or in the alternative, transferred to the Northern District of Illinois. Because Plaintiff has failed to meet her burden of demonstrating that the Court may exercise personal jurisdiction over Defendant, Defendant's motion to dismiss will be granted.

## BACKGROUND

The facts as alleged in Plaintiff's Complaint (Doc. 1) are as follows:

Plaintiff Karin Lyn Cavanaugh is a resident of Pennsylvania and Defendant Nancy Olsen Norton is a resident of Illinois. (*Compl.*, Doc. 1, ¶¶ 1-2.) Plaintiff is Defendant's niece. *Id.* at ¶ 3.

Plaintiff and Defendant are owners of an investment brokerage account ("Account") currently held by Lantern Investments, Inc. ("Lantern"), located in Melville, NY. *Id.* at ¶ 6.

As of April 24, 2013, the Account balance was $1,436,163.90, and the Account is held by Plaintiff and Defendant as Joint Tenants With Right of Survivorship ("JTWROS"). *Id.* at ¶¶ 7-8. The Account was established and funded by Ruth Olsen, who is Plaintiff's grandmother and Defendant's Mother. *Id.* at ¶ 9.

Although Plaintiff and Defendant have both been "titled owners" of the account since about April 1988, Plaintiff first became aware of the existence of the account in 2005 in connection with Defendant's "request to transfer 'all assets and all cash' from the Account into a separate account" to the exclusion of Plaintiff. *Id.* at ¶¶ 10-11. Plaintiff did not consent to the requested transfer and the account remained titled in both names as JTWROS. *Id.* at ¶ 12. In or around December 2013, Defendant requested that "'all cash and securities' from the Account be transferred 'to a new account registered solely in the name of Nancy Olsen.'" *Id.* at ¶ 14. Again, Plaintiff did not consent to the requested transfer. *Id.* at ¶ 15.

Prior to December 2012, Plaintiff was under the incorrect impression that either party could withdraw funds from the account individually based on account statements she received since 2005 documenting numerous withdrawals made by Defendant, completed without Plaintiff's knowledge or consent. *Id.* at ¶16. To protect her interests, in December 2012 Plaintiff attempted to withdraw an amount equal to one-half of the account balance plus one-half of the estimated amount of Defendant's prior withdrawals. *Id.* at ¶18-19. Plaintiff learned however, that neither she nor Defendant could withdraw funds in her own name without the other's knowledge and consent, and that disbursements from the Account

2

are made payable to both Plaintiff and Defendant and require the signature of both parties. *Id.* at ¶ 19.

In or about December 2012, Plaintiff learned from Liberty that numerous checks made payable to both her and Defendant had been drawn from the Account at the request of Defendant. *Id.* at ¶ 20. Each of these checks was delivered to Defendant, and Defendant forged, "by herself or through an agent," Plaintiff's name on them. *Id.* at ¶¶ 22-24. From January 21, 2011 to the present, no less than twelve (12) checks made payable to both Plaintiff and Defendant have been requested and delivered to Defendant in Illinois. *Id.* at ¶ 25. The total amount of these checks is $243,617.35. *Id.* at ¶ 27. Plaintiff did not authorize or consent to Defendant signing her name on any of these checks. *Id.* at ¶¶ 28-29.

From October 12, 2000 to June 24, 2008, no less than seventy-six (76) checks have been drawn from the account at Defendant's request, on information and belief, and made payable to both Plaintiff and Defendant and delivered to Defendant. *Id.* at ¶ 30-32. The amount of these checks is $294,288.66. *Id.* at ¶ 34. Plaintiff did not consent to or authorize Defendant to sign her name on any of these checks. *Id.* at ¶¶ 35-36.

On information and belief, on or about August 7, 2006, Defendant obtained a wire transfer of funds in the amount of $41,000 from the Account for her own use and benefit. *Id.* at ¶ 37. Plaintiff did not authorize Defendant to request the wire transfer or consent to Defendant receiving the wire transfer. *Id.* at ¶¶ 39-40.

From June 25, 2008 to October 6, 2010 no less than nine (9) checks have been

drawn from the account at Defendant's request. *Id.* at ¶ 41. On information and belief, these checks were made payable to both Plaintiff and Defendant and were delivered to Defendant. *Id.* at ¶¶ 42-43. The total amount of these checks is $107,313.29. *Id.* at ¶ 45. Plaintiff did not authorize or consent to Defendant signing her name on any of the checks. *Id.* at ¶¶ 46-47.

On information and belief, the total dollar amount of checks and wire transfers delivered to Defendant from the account, all of which were made payable to both Plaintiff and Defendant, from October 2000 to the present equals or exceeds $686,219.30. *Id.* at ¶ 48. Plaintiff asserts that she did not see or otherwise have knowledge that checks delivered to Defendant were made payable to both her and Defendant until in or about December 2012. *Id.* at ¶ 51. Plaintiff contends that Defendant's signing of Plaintiff's name on the checks was fraudulent and constituted a forgery and that her actions were in bad faith and for the purpose of depriving Plaintiff of use of title to such funds and to provide Defendant with exclusive use of and title to such funds. *Id.* at ¶¶ 52-54.

As a result of the foregoing events, Plaintiff commenced this action against Defendant on April 30, 2013. In Count I, labeled "Accounting," Plaintiff asserts that Defendant's actions converted the account from JTWROS to a Joint Tenancy in Common, and that Plaintiff is entitled to no less than one-half of the amount converted by Defendant, one-half of the amount remaining in the account, and a reasonable return on her investment for the funds improperly withdrawn and converted by Defendant. *Id.* at ¶¶ 59-60. In Count II, labeled "Bad Faith and Fraudulent Conversion," Plaintiff further asserts that Defendant's

requests for the checks were unauthorized, fraudulent, and deceitful and that Defendant has committed fraud on Lantern, each of the banks into which she deposited the forged checks, and Plaintiff. *Id.* at ¶¶ 62, 67.  On June 27, 2013 Defendant filed her motion to dismiss for lack of jurisdiction (Doc. 4).  This motion has been fully briefed and is ripe for disposition.

## LEGAL STANDARD

While the Court can accept a plaintiff's allegations regarding jurisdiction as true for purposes of the motions to dismiss, "once the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 147 (3d Cir. 1992) (internal citation omitted).

District courts are permitted to exercise personal jurisdiction over a nonresident to the extent allowed under the laws of the state where the district court sits.  Fed. R. Civ. P. 4(e); *Pennzoil Prods. Co. v. Colelli & Assoc., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998). Pennsylvania's long-arm statute, 42 Pa. Cons. Stat. Ann. § 5322, "permits Pennsylvania courts to exercise personal jurisdiction over nonresident defendants 'to the constitutional limits of the Due Process Clause of the Fourteenth Amendment.'" *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992).

Such due process requires that an out-of-state defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*,

5

326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)); *see also Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2853, 180 L. Ed. 2d 796 (2011) (affirming that "[t]he canonical opinion in this area remains *International Shoe*").  Due process also requires some voluntary action by the defendant; this action serves as "fair warning that a particular activity may subject [it] to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (citations omitted).

Having the requisite contacts with the forum state may subject the defendant to either general jurisdiction or specific jurisdiction.  General jurisdiction allows a court to "hear any and all claims against [a party] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851 (citing *International Shoe*, 326 U.S. at 317).  The hallmark of general jurisdiction is "continuous and systematic" contacts with the forum state, even where the cause of action is unrelated to those contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

On the other hand, specific jurisdiction "arises out of" or "relates to" the cause of action when the contacts are "isolated or specific." *Burger King*, 471 U.S. at 472–73.  It depends not on an entity's overall vulnerability to suit in a forum, but "on an 'affiliatio[n] between the forum and the underlying controversy,' principally, [an] activity or an

6

occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 131 S. Ct. at 2851 (citing von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L. Rev. 1121, 1136 (1966)).

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action where the district court lacks personal jurisdiction over the defendant.  Once a defendant raises a jurisdiction defense, "the plaintiff must 'prove by affidavits or other competent evidence that jurisdiction is proper.'" *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009) (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)). And, where, as here, there has been no evidentiary hearing, "'the plaintiffs need only establish a prima facie case of personal jurisdiction.'" *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)).

## ANALYSIS

### A.     General Personal Jurisdiction

"When the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its in personam jurisdiction when there are sufficient contacts between the State and the foreign corporation." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).  "A court may exercise general jurisdiction over a defendant where he or she has 'continuous and systematic' contacts with the forum, whether or not those contacts are related to the plaintiff's cause of action." *Metcalfe*, 566 F.3d at 334 (citing *Helicopteros*,

466 U.S. at 416). "In considering general jurisdiction, we must look to all defendants' contacts, which must be 'extensive and pervasive . . . .'" *Lolli v. Parc Mgmt., LLC*, No. 11–1372, 2012 WL 688475, at *3 (M.D. Pa. Mar. 2, 2012). Thus, "[t]he standard for evaluating whether minimum contacts satisfy the test for general jurisdiction is more stringent than the test applied to questions of specific jurisdiction." *Saudi v. Acomarit Maritimes Servs., S.A.*, 114 F. App'x 449, 453 (3d Cir. 2004) (citing *Noonan v. Winston Co.*, 135 F.3d 85, 93 (1st Cir.1998)).

In her brief if opposition to Defendant's motion to dismiss, Plaintiff does not address general jurisdiction "because the claim relates to or arises from the acts upon which jurisdiction is based." (Doc. 9, 3). In the absence of any arguments to the contrary, the Court agrees with Defendant that there is no general personal jurisdiction over Defendant where Plaintiff has failed to assert that Defendant has any connection with or does business in Pennsylvania, was served process or was domiciled in Pennsylvania, owns property in Pennsylvania, or has consented to jurisdiction in Pennsylvania. (Doc. 5, 6-7.)

**B.     Specific Personal Jurisdiction**

For specific jurisdiction to exist, it must be true that: (1) the defendant "purposefully directed [its] activities" at Pennsylvania, (2) the litigation "arise[s] out of or relate[s] to" at least one of the defendant's activities in Pennsylvania, and (3) the exercise of jurisdiction comports with traditional notions of "fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007)

(citations omitted).

Plaintiff argues that the Court has specific jurisdiction over Defendant under the "effects test" based on *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).  Courts apply the *Calder* effects test, set forth by the Third Circuit in *IMO Industries, Inc. v. Kiekert AG,* 155 F.3d 254, 265–66 (3d Cir. 1998), in determining whether specific jurisdiction exists in an intentional tort case.  *See O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 n.2 (3d Cir. 2007)*; Mendelsohn, Drucker & Associates v. Titan Atlas Mfg., Inc.*, 885 F. Supp. 2d 767, 775 (E.D. Pa. 2012).  Generally, "a court may exercise personal jurisdiction over a nonresident defendant who commits an intentional tort by certain acts outside the forum which have a particular type of effect upon the plaintiff within the forum."  *IMO Industries,* 155 F.3d at 261 (citing *Carteret Savings Bank*, *FA v. Shushan*, 954 F.2d 141,  148 (3d Cir. 1992)).  The *Calder* effects test requires that: "(1) [t]he defendant committed an intentional tort; (2) [t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) [t]he defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity."  *Id*. at 260-61.  To satisfy the third prong of the test, the Third Circuit Court of Appeals reinforced that "the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant

9

expressly aimed its tortious conduct at the forum." *Id* at 266.

As Plaintiff notes, the first element of the *Calder* effects test is satisfied in this case as the alleged bad faith and fraudulent conversion qualifies as an intentional tort. *See e.g., De Lage Landen Fin. Servs., Inc. v. Donner Med. Mktg., Inc.*, No. 10-cv-04108, 2010 WL 5136108, at *6 (E.D. Pa. Dec. 15, 2010) ("Plaintiff has alleged that Defendants committed intentional torts such as fraud and conversion.").

With respect to the second element of the *Calder* effects test, Plaintiff asserts that all of the harm alleged to be suffered by Plaintiff is felt in Pennsylvania where she resides. However the Court need not determine whether the "brunt" of the harm was felt in Pennsylvania because, as explained below, Plaintiff clearly fails to satisfy the third prong of the *Calder* effects test, which renders the exercise of personal jurisdiction over the Defendant improper in this case. *See Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) ("Only if the 'expressly aimed' element of the effects test is met need we consider the other two elements.")(citing *IMO Indus.*, 155 F.3d at 266).

With respect to the third element, whether "[t]he defendant expressly aimed [its] tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity," *IMO Industries,* 155 F.3d at 266, Plaintiff asserts that "the alleged forgeries were expressly aimed at this forum as [Plaintiff], a Pennsylvania resident, is the only other person on the joint account." *Id.* Because the Supreme Court recently clarified that a court may not exercise personal jurisdiction over a defendant based on a similar argument in *Walden v. Fiore*, — S. Ct. —, No. 12-574, 2014 WL 700098, at *7

(Feb. 25, 2007), the Court finds that personal jurisdiction over Defendant Norton is lacking.

In *Walden v. Fiore,* Justice Thomas framed the question before the Court as "whether a court in Nevada may exercise personal jurisdiction over a defendant on the basis that he knew his allegedly tortious conduct in Georgia would delay the return of funds to plaintiffs with connections to Nevada." *Id.* at *2. In *Fiore*, plaintiff-respondent airplane passengers Gina Fiore and Keith Gipson brought a *Bivens* action against petitioner-defendant Anthony Walden, a Georgia police officer working as a deputized Drug Enforcement Administration (DEA) agent. Petitioner seized almost $97,000 in cash from respondents at an airport in Atlanta on a layover during their return trip from Puerto Rico to Las Vegas, Nevada. *Id.* at *2. In the end, no forfeiture complaint was filed and the DEA eventually returned the funds to respondents. *Id.* at *3. Respondents alleged that petitioner violated their Fourth Amendment rights by seizing cash from them and keeping it after concluding that it did not come from drug-related activity, drafting a probable cause affidavit to support a forfeiture action while knowing the affidavit contained false statements, willfully seeking forfeiture while withholding exculpatory information, and withholding exculpatory information from the United States Attorney's Office. *Id*. at *3. The District Court for the District of Nevada dismissed the case for lack of jurisdiction and the Court of Appeals reversed. *Id.* The Supreme Court granted certiorari to determine whether "due process permits a Nevada court to exercise jurisdiction over petitioner." *Id.*

11

The Supreme Court held that "the Court in Nevada may not exercise personal jurisdiction under these circumstances." *Id.* at *2. In reaching its holding, the Court reiterated that the proper lens in analyzing personal jurisdiction in an intentional torts case is "whether the defendant's actions connect him to the forum." *Id.* at *7. In addressing the argument that the plaintiff-respondents suffered the "injury" caused by defendant-petitioner's allegedly tortious conduct in the forum, the Supreme Court emphasized that:

> *Calder* [*v. Jones*] made clear that mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.

*Id.* at *7.

Like the plaintiff-respondents in *Walden*, Plaintiff in the instant case, located in Pennsylvania, experienced funds being improperly withdrawn from her account "not because anything independently occurred [in Pennsylvania]"[1] but because Pennsylvania

---

[1] In a footnote, Plaintiff states that "besides the obvious fact that no other forum besides Pennsylvania could be said to be the forum into which the intentional tort was directed, at least ten of the twelve checks upon which [Defendant] forged [Plaintiff's] signature in 2011 and 2012 were cleared through a bank in Tinicum, Pennsylvania." (Doc. 9, 9, n. 1.) Based on the information provided, taking Plaintiff's allegations as true, the significance of the location where these checks were "cleared" is not apparent. *Cf. Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984) ("Neither do we believe that the mere issuance of a check which finds its way to a Pennsylvania bank provides the requisite foreseeability of economic impact in Pennsylvania" for [general] personal jurisdiction to lie)(citing *Helicopteros Nacionales de Colombia,* 104 S.Ct. 1868, 1873–1874). In

is where she "chose to be" at the time when funds were withdrawn from the Account. *Id.* As such, Plaintiff "would have experienced this same [harm] in California, Mississippi, or wherever else [she] might have traveled." *Id.*

In her accompanying affidavit, Plaintiff asserts that "[Defendant] has known that I reside in Pennsylvania since 2003 and has visited me at my home on no less than four (4) occasions." (*Pl.'s Affid.*, ¶ 2.) Plaintiff does not allege that any of these visits related to the alleged improper withdrawals and bad faith and fraudulent conversion at issue. In *Ciolli v. Iravani*, a District Court found that there was no specific jurisdiction over a defendant where his "contact with Pennsylvania since 2004 has been limited to visits to friends and extended family, one trip to the University of Pennsylvania Law School . . . , some scholarship preparation interviews, communications with individuals in Pennsylvania . . . for business unrelated to this matter, and conversations via email and phone to [plaintiff], [another individual], the University of Pennsylvania Law School's Dean of Students, and writers for the newspaper at the University of Pennsylvania." *Ciolli v. Iravani*, 651 F. Supp. 2d 356, 368-69 (E.D. Pa. 2009). In finding that there was no personal jurisdiction over defendant, the court explained that "[n]one of the above contacts with Pennsylvania are connected to [p]laintiff's . . . claim, and there are simply no allegations that [defendant] directed any activity related to this claim into Pennsylvania." *Id.* at 369. As in *Ciolli*, since Plaintiff fails to allege that Defendant's

---

>   addition, these 10-12 checks represent a small fraction of the 97 checks listed in the Complaint.

visits to her home in Pennsylvania are in any way related to the alleged tortious activity in this case, these contacts are insufficient to establish specific jurisdiction over Defendant.

In a footnote, Plaintiff also asserts that Defendant "on two occasions" took specific actions directed at converting the joint Account to an account in her name alone. (Doc. 9, 9 n. 1.) Specifically, Plaintiff alleges that Defendant "caused forms of correspondence to be delivered to [Plaintiff] in Pennsylvania relevant to the joint account seeking [Plaintiff]'s consent to transfer all funds to [Defendant]." *Id.* In *Remick v. Manfredy*, the Third Circuit Court of Appeals held that the District Court did not err in finding that it lacked personal jurisdiction over plaintiff's defamation claim arising out of two letters sent to Plaintiff in Pennsylvania. *Remick v. Manfredy*, 238 F.3d 248, 258-59 (3d Cir. 2001). Applying the *Calder* effects test, the court found that the last requirement was not satisfied because "[t]here is no indication that the letter was targeted at . . . anyone in Pennsylvania other than [plaintiff]" and thus "it cannot be said that the defendants here . . . aimed their conduct at Pennsylvania so that Pennsylvania was the focal point of the tortious activity." *Id.* The same reasoning applies to the instant case. Moreover, the relevant tortious conduct at issue is alleged improper withdrawals and bad faith and fraudulent conversion. This alleged tortious conduct is distinct from the two occasions on which Defendant contacted Plaintiff, seeking her consent to transfer all funds to Defendant. Therefore, the Court cannot exercise personal jurisdiction over the Defendant. However, because amendment may not necessarily be futile, Plaintiff will be

granted leave to file an amended complaint to address the deficiencies in personal jurisdiction.

## CONCLUSION

For the above stated reasons, Defendant's motion to dismiss for lack of personal jurisdiction will be grated, but Plaintiff will be afforded leave to file an amended complaint.[2]

An appropriate order follows.

| | |
|---|---|
| March 13, 2014 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

---

[2] Defendant raised the issue of transfer of venue briefly. As argument on this issue was not fully developed, the Court will not address the issue at this time. Of course, if Plaintiff files an amended complaint, Defendant may reassert her position.